UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
LOIS ANN MORRIS,

            Plaintiff,

    - against -

NYC HRA, ADULT PROTECTIVE SERVICES,
VILLAGE CARE, and JAMAICA HOSPITAL,

           Defendants.
------------------------------------------------------------X

MEMORANDUM AND ORDER
13-CV-1845 (RRM)(MDG)

ROSLYNN R. MAUSKOPF, United States District Judge.

On April 2, 2013, *pro se* plaintiff Lois Ann Morris filed the instant complaint pursuant to 42 U.S.C. § 1983 ("Section 1983") against two New York City agencies and two private organizations. Plaintiff's application to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915. For the reasons that follow, the Complaint is dismissed *sua sponte*, with leave to replead within 30 days from the date of this Order.

## BACKGROUND

Plaintiff alleges that she was involuntarily committed to Jamaica Hospital on April 4, 2011 on the basis of a "mental health warrant." (Addendum at 1.)[1] The Complaint is unclear about when the circumstances leading to the warrant and commitment first arose and how the incident unfolded. Plaintiff states that she, "a senior citizen, aged 62, out of work during a severe recession – and in rent arrears – and having a physical condition that is stress sensitive – asks a social service worker she knows only from brief phone contact to refer her to Adult Protective Services." (*Id.* at 15.) Plaintiff states that she was seeking "a rent grant" to stave off

---

[1] The document consists of a single, hand-written page titled "Complaint," followed by a typed 23-page Addendum. The first 14 pages are headed "Section Four: Why the Court Has Jurisdiction." On page 15 appears a new hearing: "Three - Statement of Facts." The page numbers referred to in the Court's Order are the numbers affixed by plaintiff to each page of the Addendum.

1

eviction and "a storage grant" to pay for rental of a storage unit in which to store her accumulated "books and papers that she can't afford to put in storage." (*Id.* at 16.) "The Plaintiff would like to visit APS in their office – but it demands it come to her apartment." (*Id.* at 15.) Thereafter, according to the Complaint, APS sought to move Plaintiff to a shelter and planned "to do 'heavy cleaning' – a euphemism for indiscriminately throwing out what can be peoples' [*sic*] lifetime possessions – like Plaintiff's – housed in her apartment." (*Id.*) Plaintiff alleges that APS also began to pressure her to have a psychiatric evaluation, which she refused. (*Id.* at 15.)

The Complaint includes vague references to additional interactions with APS workers and describes "legal papers of APS' that seem to say she missed a lot of appointments with them." (*Id.* at 15-17.) In one undated incident, "Plaintiff comes home one evening from the library to find herself to her complete surprise – without any warning or notice – locked out of her apartment – with the lock changed – and no new key left behind." (*Id.* at 17.) "APS also later admits to coming into the apartment without telling the client, beforehand when she isn't at home. . . . The lack of control of access to her housing goes on for many months and distresses the Plaintiff very much but she seems to have no rights in the matter." (*Id.*)

Plaintiff alleges that APS instructed her to appear at a housing court hearing on April 4, 2011 and to bring financial documents. (*Id.*) "When the client does go to court for the hearing – she is unexpectedly met by an APS lawyer and nurse who pressure her to take a psychiatric evaluation." (*Id.*) "Not realizing that a paper the APS lawyer handed her . . . is a mental health petition – whatever that is – the Plaintiff quietly walks out of the APS office" and is handcuffed and taken to a courthouse cell. (*Id.*) Plaintiff alleges that she was subsequently taken by ambulance, against her will, to Jamaica Hospital. She states that she is "subjected to what she

believes is excessive police powers and force and arrives at the hospital handcuffed like a criminal." (*Id.* at 18.)

Plaintiff alleges that "[t]he crux of the mental health petition initiating events leading to Plaintiff being locked up – was a complaint she had too many books and papers in her apartment." (*Id.* at 23.) Plaintiff alleges that "a rent grant agency" worker and "unnamed 'neighbors'" were critical of her, and that a "second agency person named on the warrant" acted in retaliation for Plaintiff's complaints about the delays in helping her with her rent. (*Id.* at 3.) The Complaint includes multiple unspecified allegations of retaliation. (*Id.* at 2, 11-12, 19.)

Plaintiff alleges that she was involuntarily held for a total of 11 days. She alleges additional mistreatment and deprivation of her constitutional rights during her commitment. She claims that her repeated requests to speak with an attorney, to get copies of the Mental Hygiene Law rights of institutionalized persons and her own medical records, and to make telephone calls were denied or delayed. (*Id.* at 2, 8, 11, 18, 19, 20, 21.) She states that she was forced to submit to psychiatric evaluations over her strenuous objections. (*Id.* at 4–5, 6, 18, 22.) She alleges that the conditions of the mental health ward, including chains on beds, limited access to staff, and a co-ed toilet-shower facility were "barbaric." (*Id.* at 9, 19.) "Plaintiff believes [] the hospital violated her[] confidentiality and privacy rights." (*Id.* at 21; *see also id.* at 11, 19, 20, 23.) She further alleges that defendants conspired "with the state's police powers" to violate her constitutional rights. (*Id.* at 5, 7, 12, 13.) She also challenges the constitutionality of New York's Mental Hygiene Laws. (*Id.* at 2, 7, 10, 12.)

Plaintiff also alleges an unspecified violation of the Americans with Disabilities Act, but does not identify any action that would be covered by this legislation. (*See id.* at 12.) She argues that the recently enacted New York Secure Ammunition and Firearms Enforcement Act of 2013

3

"is a violation of her civil rights," including her right to travel, although she disclaims any interest in owning a gun. (*Id.* at 13.)

Plaintiff further alleges that defendants' actions constituted defamation and have harmed her reputation with her neighbors and with other social services organizations. (*Id.* at 12, 21, 22, 23.) She states that the APS and Jamaica Hospital continue to monitor her actions and interfere with ongoing relationships, and have harmed her ability to seek legal representation. (*Id.* at 12–13.)

Plaintiff seeks unspecified monetary damages and "expungement and nullification of a civil commitment conviction and other psychiatric related records and of the medical chart of Jamaica Hospital and of the APS chart." (*Id.* at 14.)

## STANDARD OF REVIEW

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although all allegations contained in the complaint are assumed to be true, this tenet is "inapplicable to legal conclusions." *Id.* While *pro se* complaints must contain sufficient factual allegations to meet the plausibility standard, *see Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), the court reviews such allegations by reading the complaint with "special solicitude" and interpreting the allegations to raise the "strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474–75 (2d Cir. 2006) ( *per curiam* ); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (internal quotation marks omitted).

Nonetheless, the court is required to dismiss a complaint, filed *in forma pauperis*, if it "(i) is frivolous or malicious, (ii) fails to state a claim upon which relief may be granted, or (iii) seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B). If a liberal reading of the pleading "gives any indication that a valid claim might be stated," this court must grant leave to amend it. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## DISCUSSION

### A. Civil Rights Claims

Plaintiff alleges that defendants' actions in arresting her and confining her for mental health treatment deprived her of constitutional rights and are actionable under 42 U.S.C. § 1983 and other sections of the Civil Rights Acts. To state a claim pursuant to Section 1983, a plaintiff must allege that the challenged conduct was "committed by a person acting under color of state law," and that the conduct "deprived [the plaintiff] of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010) (quoting *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994)). Section 1983 does not create any independent substantive rights; but rather is a vehicle to "redress . . . the deprivation of [federal] rights established elsewhere." *Thomas v. Roach*, 165 F.3d 137, 142 (2d Cir. 1999) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). A Section 1983 plaintiff seeking to recover money damages "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Plaintiff has not named any individual defendants who could be held liable for the alleged deprivation of her constitutional rights. The only named defendants are two New York City agencies and two private entities. The New York City Human Rights Administration ("HRA"), and its sub-agency, Adult Protective Services, are not suable entities. The New York City Charter provides that suits "shall be brought in the name of the City of New York and not in that

5

of any agency." N.Y. City Charter § 396; *see also Jenkins v. City of New York*, 478 F.3d 76, 93 n.19 (2d Cir. 2007).

Although the City of New York may be sued, a municipality can be liable under 42 U.S.C. § 1983 only if a plaintiff can show that a municipal policy or custom caused the deprivation of his or her constitutional rights. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978). Proof of a single incident of unconstitutional activity is not sufficient to impose liability on a municipality unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy that can be attributed to a municipal policymaker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985). In this case, plaintiff has not alleged that the City of New York, through its Social Services agencies, has engaged in an unconstitutional policy that deprived her of her rights. Accordingly, plaintiff's claims against the HRA and APS are dismissed, and the City of New York will not be substituted as a defendant.

The remaining two defendants, Village Care and Jamaica Hospital, are both private entities that are not normally amenable to suits for damages pursuant to 42 U.S.C. § 1983. As the Supreme Court has held, "the under-color-of-state-law element of § 1983 excludes from its reach merely private conduct, no matter how discriminatory or wrongful." *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quotations omitted). Plaintiff has not alleged that the hospital or its staff members were state actors, were acting in concert with state actors, or were serving as an instrumentality of the state. *See, e.g., Kia P. v. McIntyre*, 235 F.3d 749, 755–56 (2d Cir. 2000) (private hospital was not a state or municipal facility and thus was not liable pursuant to § 1983, unless it was acting as an instrumentality of the state).

In order to maintain her claims pursuant to Section 1983, plaintiff must identify individual state actor defendants[2] whom she believes to be responsible for the alleged deprivation of her rights and identify how each of these individuals' actions or omissions caused the alleged deprivation. In light of her *pro se* status, plaintiff is granted leave to amend her complaint.

### B. Other Claims

Plaintiff also invokes the Civil Rights conspiracy provisions of 42 U.S.C. § 1981, § 1982, § 1983, and § 1985. Although some of these provisions may be applied to conspiracies by private actors, none of them applies to plaintiff's claims: plaintiff has not alleged that she was discriminated against on the basis of race in the making or enforcement of contracts or real estate transactions or that defendants conspired against her in federal or state court proceedings. Plaintiff has also not established any bases for liability under the Americans with Disabilities Act, nor suggested adequate grounds for challenging the constitutionality of New York's Mental Hygiene Law, *See Project Release v. Prevost*, 722 F.2d 960, 971 (2d Cir. 1983) (finding that New York's statutory scheme for civil commitment satisfies due process), nor demonstrated that she has standing to challenge the New York Secure Ammunition and Firearms Enforcement Act of 2013.

### C. Medical Records

Plaintiff has presented no basis in federal law for liability against any of the named defendants, nor any grounds for expungement of the civil commitment from her medical records. She may have a remedy in state courts: New York's Mental Hygiene Law establishes procedures for the involuntary civil commitment of persons suffering from mental illness, *see*

---

[2] If plaintiff cannot identify the individuals by name at this time, she may name "John Doe" defendants and provide a physical description for each, along with his or her position and place of employment.

NY Mental Hyg. Law § 9; permits an individual to challenge the accuracy of materials contained in her records, NY Mental Hyg. Law § 33.16(g); and provides a process for sealing a patient's medical records upon a finding that the petitioner was illegally detained. *See* NY Mental Hyg. Law § 33.14.

A federal statute, the Health Insurance Portability and Accountability Act ("HIPAA") established standards for the protection of individual health information, and allowed the promulgation of regulations designed to protect the privacy and accuracy of individually identifiable health information. 42 U.S.C. §§ 1320d - 1320d-8. The HIPAA regulations provide a process by which individuals may request amendments to the contents of their records and establish procedures for accepting or denying the requested amendment. 45 C.F.R. § 164.526(b)-(d). However, HIPAA does not provide a private cause of action through which individuals can enforce its provisions. *See Warren Pearl Const. Corp. v. Guardian Life Ins. Co. of Am.,* 639 F. Supp. 2d 371, 377 (S.D.N.Y. 2009) (collecting cases for the proposition that HIPAA does not provide a private right of action). Accordingly, plaintiff's request for expungement of her medical records is denied for failure to state a claim. 28 U.S.C. § 1915(e)(2)(B)(ii).

## CONCLUSION

For the foregoing reasons, plaintiff's claims against the named defendants are dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B). However, the Court grants plaintiff leave to file an amended complaint in accordance with this order within thirty (30) days from the date this order is entered. The amended complaint must be labeled "Amended Complaint" and bear the same docket number as this Order. No summonses shall issue at this time, and all further proceedings shall be stayed for 30 days.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal taken from this order would not be taken in good faith, and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444–45 (1962). The Clerk of Court is directed to send a copy of this Memorandum and Order to petitioner, and to note the mailing on the docket.

SO ORDERED.

Dated: Brooklyn, New York
June 19, 2013

*Roslynn R. Mauskopf*
_____
ROSLYNN R. MAUSKOPF
United States District Judge